IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CX REINSURANCE COMPANY
LIMITED,

    *Plaintiff*,

    v.

DANIEL MATHEW HEGGIE, JR., et al.

    *Defendants*.

Civil Action No. ELH-15-1674

## MEMORANDUM

Plaintiff CX Reinsurance Company Limited ("CX Re"), formerly known as CNA Reinsurance Company Limited, filed a declaratory judgment action against a host of defendants, including Arbor Inc. ("Arbor") and Daniel Heggie, Jr.  ECF 1.[1]  CX Re seeks a determination that it "does not have an obligation to defend or indemnify" Arbor in a lead paint action filed in the Circuit Court for Baltimore City by Heggie, as plaintiff, against Arbor and the other parties named by CX Re as defendants in this case.  *Id.*

The lead paint case filed by Heggie in 2013, Case No. 24-C-13-6788 (the "Tort Suit"), alleges, *inter alia*, that Heggie, who was born in 1993, was injured by his exposure to lead-based paint at his mother's residence, which was owned by Arbor.  ECF 1-2 at 94-100.  Arbor is a named insured in two consecutive general liability insurance policies (ECF 1-3; ECF 1-4) (collectively, the "Policies") issued by CX Re to B&R Management, Inc. and others.  *See* ECF 1-3 at 4; ECF 1-4 at 5.

CX Re explains that it sued Heggie, the plaintiff in the Tort Suit, and all of the defendants he named in the Tort Suit, "because they may have or claim an interest in the declarations sought

---

[1] This suit is founded on 28 U.S.C. § 2201.  Cx Re also relies on diversity jurisdiction. 28 U.S.C. § 1332.  ECF 1 ¶ 6.

by this action." ECF 1 ¶ 5. However, Heggie and Arbor are the only remaining defendants in the suit, as the Court has previously granted CX Re's requests to dismiss all of the other defendants, pursuant to Fed. R. Civ. P. 41(a). ECF 35; ECF 36; ECF 46.[2]

Now pending before the Court is "Plaintiff's Motion for Summary Judgment" (ECF 43), supported by a memorandum of law (ECF 43-1) (collectively, the "Motion"), and several exhibits. ECF 43-2 through ECF 43-6. In the Motion, CX Re asserts that it is not required to defend or indemnify Arbor in the Tort Suit because an exclusion to the Policies precludes coverage and Arbor has failed to prove that an exception to the exclusion applies. *See* ECF 1 ¶¶ 30-37. No defendant filed an opposition to the Motion.

A hearing is unnecessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant CX Re's Motion.

## I.      Factual and Procedural Background

CX Re filed its "Complaint for Declaratory Relief" in this Court on June  9, 2015. ECF 1. In particular, CX Re requests the Court, *id*. at ¶ 1, to:

> declare that, due to the application of an exclusion of coverage contained in the policies, CX Re does not have an obligation to defend or indemnify Arbor in an action, brought by Mr. Heggie against all other parties to this case, in which Mr. Heggie claims he sustained injuries due to exposure to paint or dust containing lead or lead pigment.

Under Maryland law, in declaratory judgment actions regarding an insurer's duty to defend, the principally relevant facts are the provisions of the insurance policy and the

---

[2] On December 7, 2015, CX Re requested dismissal of those defendants who had not yet been served. ECF 35. CX Re explained that these defendants were either no longer parties to the Tort Suit, were not meaningfully participating in the Tort Suit, or "had no potential interest in the declarations sought by this litigation." ECF 31 at 1-2. I granted the motion to dismiss those defendants on December 7, 2015. ECF 36. On October 14, 2016, CX Re requested dismissal of Jacob Dackman & Sons, LLC; Bernard Dackman and/or the Estate of Bernard Dackman; The Dackman Company; Joel Dackman and/or the Estate of Joel Dackman; and Sandra Dackman and/or the Estate of Sandra Dackman. ECF 45. I granted that motion. ECF 46.

allegations of the underlying lawsuit, for which the insured seeks coverage and a defense.[3]

Ordinarily, other facts are relevant, if at all, only for purposes of clarifying the meaning of the policy or establishing a basis for coverage that is not apparent from the factual allegations in the underlying complaint. *See, e.g., Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 458–60, 889 A.2d 387, 393–94 (2006) (stating that, in interpreting an insurance policy, Maryland law permits consideration of evidence showing the parties' intent to use policy terms in a special or technical sense; the circumstances of the parties at the time the policy was issued; and extrinsic evidence that may resolve ambiguities, if any, in the terms of the policy); *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 105–11, 651 A.2d 859, 863–66 (1995) (stating that an insured may present evidence beyond the underlying complaint to establish a potentiality of coverage).

---

[3] CX Re relies exclusively upon Maryland substantive law. *See* ECF 43-1 at 2-3. I agree that Maryland substantive law governs. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) ("Because we sit in diversity in this case, we must apply the substantive law of the forum state including its choice of law rules."); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

Maryland is the forum state. When insurance policies, such as the Policies at issue, contain no choice of law provisions, Maryland applies the doctrine of *lex loci contractus*, "which requires that the construction and validity of a contract be determined by the law of the place of making of the contract." *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 570, 659 A.2d 1295, 1300 (1995); *see also*, *U.S. Life Ins. Co. v. Wilson,* 198 Md. App. 452, 462–63, 18 A.3d 110, 116 (2011). Moreover, the "'*locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid.'" *Id.* at 463, 18 A.3d at 116 (citation omitted); *see also Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Univ.*, 489 U.S. 468, 474 (1989) ("interpretation of private contracts is ordinarily a question of state law"); *accord James v. Circuit City Stores, Inc.,* 370 F.3d 417, 421–22 (4th Cir. 2004); *see also French v. Assurance Co. of Am.*, 448 F.3d 693, 700 (4th Cir. 2006) (stating, in diversity declaratory action regarding coverage under insurance policy issued to Maryland policyholder, "we apply . . . Maryland's substantive law regarding the interpretation of an insurance policy").

In this case, the Policies were delivered in Maryland. *See* ECF 1-3 at 2; ECF 1-4 at 2. Therefore, Maryland law applies.

Here, CX Re has moved for summary judgment as to all remaining defendants. In considering a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party. *See, e.g.*, *Yates v. Terry*, 817 F.3d 877, 881 (4th Cir. 2016). Because the defendants did not respond to or answer the Complaint, the factual allegations in the Complaint are deemed to be admitted. Fed.R.Civ.P. 8(b)(6) provides: "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided."

### A.  The Policies

CX Re's request for declaratory judgment arises out of two general liability policies for which Arbor was a named insured. *See* ECF 1 ¶ 3; ECF 1-3 at 4; ECF 1-4 at 5; ECF 44-1 through ECF 44-3.[4] The first policy, CNAGL1106-97, "covered the period from August 1, 1997 to August 1, 1998." ECF 1 ¶ 16; *see* ECF 1-3 at 2. The second policy, CNAGL1240-98, "covered the period from August 1, 1998 to August 1, 1999." ECF 1 ¶ 16; *see* ECF 1-4 at 2.

The Policies provide that CX Re will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." ECF 44-1 at 1; ECF 44-2 at 1. In the Policies, "bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." ECF 44-1 at 10; ECF 44-2 at 9. However, the Policies only apply to bodily injuries if, *inter alia*, the "'bodily injury' . . . occurs during the policy period." ECF 44-1 at 1; ECF 44-2 at 1.

---

[4] The copies of the Policies, ECF 43-4 and ECF 43-5, are illegible. At the Court's request, on September 15, 2016 (ECF 44), CX Re submitted clarifications, *i.e.*, policy forms that "bear the same form numbers as the pertinent, material portions of Exhibit C (43-4) and Exhibit D (ECF 43-5) . . . ." *See* ECF 44-1 through ECF 44-3. Counsel has represented that the forms and the Policies "are believed to contain identical language." ECF 44.

The Policies include a specific endorsement titled "COVERAGE LIMITATION – LEAD CONTAMINATION" (the "Exclusion").  It provides, ECF 44-3 at 1:  "This insurance *does not* apply to: . . . (3) '[b]odily injury' . . . arising out of the ingestion, inhalation, absorption of, or exposure to, lead, lead-paint or other lead-based products of any kind, form or nature whatsoever."  (Emphasis added).  However, the Policies also include an exception to the Exclusion (the "Exception").  *Id.*  It provides, in part:

> Section II – COVERAGE LIMITATION
>
> (a.) Exclusion (3) above does not apply to and we will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" . . . arising out of the Ingestion, Inhalation, absorption of, or exposure to lead, lead-paint or other lead-based products of any kind, form or nature whatsoever to which the insurance provided by this endorsement applies. We will have the right and duty to defend any "suit" seeking those damages. . . .

The Exception to the Exclusion also contains a qualification.  *Id*. at 2.  It provides, in part, *id.*:

> (b.) This insurance applies to "bodily injury" . . . only if: *** (4) For "bodily injury" a lead level in blood, bone or body tissue in excess of the "safe level" is first diagnosed by a State licensed physician or other State licensed health care provider during this policy period[.]

The "safe level" is defined as "'10 micrograms of lead per deciliter of blood as prescribed by the Centers For [sic] Disease Control.'" ECF 43-1 at 6 (internal citation omitted); *see* ECF 44-3 at 3.

## B.   The Tort Suit

On November 12, 2013, Heggie filed the Tort Suit in the Circuit Court for Baltimore City against more than one dozen defendants.  *See* ECF 1-2.  He alleged: "Defendant, Arbor Inc., owned and/or controlled and/or managed . . . 2308 E. North Avenue . . ." where the "mother of the Plaintiff, Mary Billinger, was a tenant . . . ."  *Id.* at 94–95.  Heggie also stated that he "lived

in the dwelling or frequented the dwelling as an invitee of the tenant during 1999-2001." *Id*. at

95. Further, Heggie averred, *id*.:

> Both before and after the time the Plaintiff moved into the dwelling, [Arbor] had
> either caused or allowed the continued existence of paint containing lead pigment
> on its interior and exterior walls, doors, floors, ceilings and woodwork and
> knowingly allowed said paint to chip and flake thereby rendering the dwelling
> dangerous and unfit for human habitation, especially for children of tender years.

In addition, Heggie asserted, *id*.: "During the time the Plaintiff resided in the dwelling,

the Plaintiff ingested and consumed paint and dust containing lead and lead pigment thereby

causing the Plaintiff to suffer the injuries, illness and infirmities herein alleged." According to

Heggie, his lead exposure "during critical stages of development" caused "severe and permanent

brain damage." *Id.*

Arbor's counsel "tendered the [Tort Suit] to CX Re" on April 23, 2014. ECF 1 ¶ 15. On

July 3, 2014, "CX Re undertook to participate in Arbor's defense of the claims stated by Heggie

on a time-on-risk basis, subject to a full reservation of rights." *Id*. ¶ 25. But, CX Re "disclaimed

any obligation under the Policy to indemnify Arbor in connection with Heggie's claims." *Id*. ¶

26. Then, "[o]n May 19, 2015, CX Re disclaimed any duty to defend Arbor on the ground that

the Policy generally excludes coverage for claims such as the [Tort Suit] that allege bodily injury

caused by exposure to lead." *Id*. ¶ 27.

## II.     Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is

appropriate only "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322–24 (1986). The non-moving party must demonstrate that there are disputes of material

fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. To defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Id.* at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

Furthermore, district courts must "thoroughly analyze[]" motions for summary judgment, even where unopposed. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013). "In considering a motion for summary judgment, the district court "*must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 n. 8 (4th Cir. 2010) (emphasis in original) (internal quotations omitted). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

In resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *see also Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016); *Yates*, 817 F.3d at 881 (4th Cir. 2016). Affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### III.    Discussion

### A.

According to CX Re, it has no duty to defend or indemnify Arbor. It states, ECF 1 ¶ 30: "Under the exclusion contained in the COVERAGE LIMITATION–LEAD CONTAMINATION endorsement . . . the Policy 'does not apply' because [Heggie's] bodily injuries allegedly arose

out of the ingestion and consumption of 'paint and dust containing lead and lead pigment.'"

Furthermore, CX Re asserts, *id*. ¶ 32:

> The potentially applicable exception requires that Arbor demonstrate that Heggie was first diagnosed with a lead level in excess of the "safe level" of 10 micrograms of lead per deciliter during one of the policy periods of August 1, 1997 to August 1, 1998 (CNAGL1106-97) or August 1, 1998 to August 1, 1999 (CNAGL1240-98).

> Noting that "the insured – here, Arbor – bears the burden of proving that an exception to the exclusion applies," CX Re argues that Arbor "has not met its burden to show that any exception to the exclusion . . . applies . . . ." *Id*. ¶¶ 31, 33.

In the federal courts, declaratory judgments are authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides (with exceptions not relevant here) that, in "a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." Because the parties' rights and obligations in this case arise under the Policies, resolution of the Motion turns on the text of the Policies, which must be interpreted in accordance with Maryland law.

Maryland law is well settled that "the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts." *Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001); *see Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 540, 921 A.2d 245, 251 (2007); *State Farm Mut. Ins. Co. v. DeHaan*, 393 Md. 163, 193, 900 A.2d 208, 225-26 (2006); *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305, 753 A.2d 533, 537 (2000). Accordingly, "'ordinary principles of contract interpretation apply.'" *Megonnell v. United Servs. Automobile Ass'n*, 368 Md. 633, 655, 796 A.2d 758, 772

(2002) (citation omitted); *see Dutta v. State Farm Ins. Co.,* 363 Md. 540, 556, 769 A.2d 948, 957 (2001).

In "'deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself.'" *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137, 761 A.2d 997, 1005 (2000) (quoting *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779, 625 A.2d 1021 (1993)). However, the court bears responsibility for ascertaining the scope and limitations of an insurance policy. *See Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194, 199 (2001); *Lloyd E. Mitchell, Inc. v. Maryland Casualty Co., Inc.*, 324 Md. 44, 56, 595 A.2d 469, 475 (1991).

The Maryland Court of Appeals has explained that judicial "interpretation of insurance contracts to determine the scope and limitations of the insurance coverage, like any other contract, begins with the language employed by the parties." *MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 279, 825 A.2d 995, 1005 (2003). Generally, Maryland courts "analyze the plain language of [an insurance] contract according to the words and phrases in their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Universal Underwriters Ins. Co.*, 135 Md. App. at 137, 761 A.2d at 1005; *see Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375, 379 (4th Cir. 2015) (quoting *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 166, 702 A.2d 767, 771 (1997)); *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 14-15, 852 A.2d 98, 106 (2004); *Litz v. State Farm Fire and Casualty Co.*, 346 Md. 217, 224, 695 A.2d 566, 569 (1997).

"If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said." *Capital City*, 788 F.3d at 379 (quoting *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 101 (4th Cir. 2013)). "'Unless there is an indication that the

parties intended to use words in the policy in a technical sense, they must be accorded their customary, ordinary, and accepted meaning.'" *Maryland Cas. Co. v. Blackstone Intern. Ltd.*, 442 Md. 685, 695, 114 A.3d 676, 681 (2015) (quoting *Lloyd E. Mitchell, Inc.*, 324 Md. at 56, 595 A.2d at 475). However, if there is evidence that the parties intended to ascribe a special or technical meaning to certain words used in an insurance contract, those words are construed in accordance with that understanding. *Valliere v. Allstate Insurance Co.*, 324 Md. 139, 142, 596 A.2d 636, 638 (1991) ("When a policy defines a term in a manner which differs from the ordinary understanding of that term, the policy definition controls."); *see also Walk*, 382 Md. at 14-15, 852 A.2d at 106; *Dutta*, 363 Md. at 556, 769 A.2d at 957.

Moreover, the insurance policy, including endorsements, "must be construed as a whole and 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution' must be examined." *United Services Auto. Ass'n v. Riley*, 393 Md. 55, 79, 899 A.2d 819, 833 (2006) (quoting *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779, 784 (1995)); *accord Clendenin Bros.*, 390 Md. at 459, 889 A.2d at 392; *see Prince George's Cnty. v. Local Gov't Ins. Trust*, 388 Md. 162, 173, 879 A.2d 81, 88 (2005) ("In general, the main insurance policy and an endorsement constitute a single insurance contract, and an effort should be made to construe them harmoniously."); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985); *see also Capital City*, 788 F.3d at 379.

If the court deems the provisions of an insurance policy unambiguous, the meaning of the terms is determined by the court as a matter of law. *Clendenin Bros. Inc.*, 390 Md. at 459, 889 A.2d at 393; *see Pa. Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 118 (4th Cir. 2012) (applying Maryland law). In that circumstance, "'a court has no alternative but to enforce those terms.'" *Megonnell*, 368 Md. at 655, 796 A.2d at 772 (quoting *Dutta,* 363 Md. at 557, 556 A.2d

at 1138).  But, if a contractual term is ambiguous, the court may consult "extrinsic sources" to ascertain the meaning.  *Cole,* 359 Md. at 305, 753 A.2d at 537.  A policy term is considered "ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning."  *Id.* at 306, 753 A.2d at 537.

"'[U]nlike the majority of other states, Maryland does not follow the rule that insurance policies are to be most strongly construed against the insurer.'"  *Capital City*, 788 F.3d at 379 (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 97, 699 A.2d 482, 494 (1997)); *see Megonnell*, 368 Md. at 655, 796 A.2d at 771; *Bushey v. Nothern Assurance Co. of America*, 362 Md. 626, 632, 766 A.2d 598, 601 (2001); *Collier v. MD-Individual Practice Ass'n*, 327 Md. 1, 5, 607 A.2d 537, 539 (1992).  But, "if ambiguity is determined to remain after consideration of extrinsic evidence, 'it will ordinarily be resolved against the party who drafted the contract,' where no material evidentiary factual dispute exists."  *Clendenin Bros.*, 390 Md. at 459-60, 889 A.2d at 394; *see Callaway*, 375 Md. at 280, 825 A.2d 995, 1005-06 ("[W]hen a term in an insurance policy is found to be ambiguous, the court will construe that term against the drafter of the contract which is usually the insurer.").  In other words, where ambiguous language remains, the court "construe[s] that language 'liberally in favor of the insured and against the insurer *as drafter of the instrument.*'"  *Connors v. Gov't Employees Ins. Co.*, 442 Md. 466, 481–83, 113 A.3d 595, 603–05 (2015) (emphasis in original) (quoting *Megonnell*, 368 Md. at 655, 796 A.2d at 772).

## B.

Maryland law recognizes "an insurance company's duty to defend its insured for all claims which are potentially covered under an insurance policy."  *Maryland Cas. Co.*, 442 Md. at 695, 114 A.3d at 682; *see Walk*, 382 Md. at 15, 852 A.2d at 106.  "'Even if a tort plaintiff does

not allege facts which clearly bring the claim within or without the policy coverage, **the insurer still must defend if there is a potentiality that the claim could be covered by the policy**.'" *Id.* (emphasis in original) (quoting *Brohawn v. Transamerica Insurance Co.*, 276 Md. 396, 407–08, 347 A.2d 842, 850 (1975)).  Indeed, "[i]f there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured."   *Walk*, 382 Md. at 16, 852 A.2d at 106-07. Therefore, the insurer is obligated to defend an insured if "the underlying tort suit . . . *allege*[*s*] action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be."  *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643, 679 A.2d 540, 544 (1996) (emphasis in original); *see Aetna Casualty & Surety Co. v. Cochran*, 337 Md. 97, 102-03, 651 A.2d 859, 861 (1995).

Determining whether an insurer has a duty to defend is a two-step process.  In *Capital City*, the Fourth Circuit reiterated two categories of questions to resolve the issue, and said, *id.* at 379:

> "(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses on the allegations of the tort suit. At times these two questions involve separate and distinct matters, and at other times they are intertwined, perhaps involving an identical issue."

(quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282, 285 (1981)); *see also Maryland Cas. Co.*, 442 Md. at 696, 114 A.3d at 682.

Therefore, in determining whether an insurer is obligated to defend a tort action, courts applying Maryland law first determine the coverage and defenses under the terms and requirements of the insurance contract, and in accordance with the principles of contract construction, as outlined above.  *Capital City*, 788 F.3d at 379.  As noted, in conducting this

-13-

analysis, courts apply "ordinary contract principles to insurance contracts."  *Id.*; *see Maryland Cas. Co.*, 442 Md. at 695, 114 A.3d at 681.  Thus, the determination of coverage turns on "'the relevant policy provisions.'"  *Capital City*, 788 F.3d at 379 (quoting *Perini/Tompkins*, 738 F.3d at 101); *see Local Gov't Ins. Trust*, 388 Md. at 173, 879 A.2d at 88.

CX Re contends that it is not required to defend Arbor because the Policies are not applicable to the Tort Suit.  It asserts, ECF 43-1 at 11: "The Policies exclude coverage for bodily injury caused by exposure to lead, except where an elevated lead level is 'first diagnosed' during the policy period.  Because Arbor has not and cannot show that exception applies, the Policies do not cover the alleged bodily injury."

Plaintiff correctly argues that "[t]he general rule under Maryland law is the insured has the initial burden to show that the claim is covered under the policy's insuring agreement."  ECF 43-1 at 8.  But, even "if the claim is excluded, it may be covered under an exception to the exclusion."  However, "the burden shifts back to the insured to prove the applicability of that exception."  *Id.*; *see*, *e.g.*, *CX Reinsurance Co. Ltd. v. Levitas*, JKB-15-2174, 2016 WL 4888881, at *6 (D. Md. Sept. 15, 2016).

Maryland courts employ "a three-part burden-shifting scheme . . . when determining whether an action is covered within the scope of the insurance policy."  *CX Reinsurance Co. Ltd. v. Camden Management Services, LLC*, WMN-14-180, 2014 WL 5510914 at *3 (D. Md. Oct. 30, 2014).  First, "the burden of proving entitlement to insurance benefits lies with the insured."  *HSK v. Provident Life & Accident Ins.*, 128 F. Supp. 3d 874, 882 (D. Md. 2015) (applying Maryland Law); *see Alpha Cons. and Engineering Corp. v. The Ins. Co. of the State of Pa.*, 402 Fed. Appx. 818 (4th Cir. 2010) ("The initial burden of proof is placed upon an insured seeking coverage under a policy's insuring language.") (applying Maryland law).  Second, the insurance

company must demonstrate that the policy excludes coverage of the claim.  *Ace American Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 798 (D. Md. 2008) (applying Maryland law); *see also Trice, Geary & Myers, LLC v. Camico Mut. Ins. Co.*, 459 Fed. Appx. 266, 274 (4th Cir. 2011) ("The burden is on the insurer, not the insured, to prove the applicability of an exclusion.") (applying Maryland law); *Finci v. Am. Cas. Co. of Reading*, *Pa.*, 323 Md. 358, 394, 593 A2d 1069, 1087 (1991) (observing that the insurance company had the burden of proving an exclusion to coverage in its policy).  Third, if the insurance company prevails in showing that the claim is excluded, the insured must prove the applicability of an exception.  *Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 535 (D. Md. 2008) (applying Maryland law); *see also*, 2 Claude L. Stuart, III and Evan T. Caffrey, <u>Law and Practice of Ins. Coverage Litig.</u>, § 23:20 (2016) ("[I]t is generally held in most jurisdictions that while insurers have the burden of proof on the applicability of exclusions, the insured has the burden on demonstrating that its claim falls within an exception to an exclusion.").

CX Re does not dispute that Arbor can carry its initial burden of showing coverage under the Policies.  ECF 43-1 at 11.  The suit brought by Heggie seeks "damages for 'bodily injury' that allegedly took place within the 'coverage territory' during the policy period."  *Id*.  This unquestionably creates the potentiality of coverage.  The burden thus shifts to the CX Re to prove that an exclusion applies to coverage of the Tort Suit.  *Id*.  *See HSK*, 128 F. Supp. 3d at 882.  As noted, the applicable Exclusion states, ECF 44-3 at 1: "This insurance does not apply to . . . '[b]odily injury' . . . arising out of the Ingestion, inhalation, absorption of, or exposure to, lead, lead-paint or other lead-based products of any kind, form or nature whatsoever."

According to CX Re, "Under the exclusion contained in the COVERAGE LIMITATION – LEAD CONTAMINATION endorsements, the Policies 'do not apply' because Mr. Heggie's

bodily injuries allegedly arose out of the ingestion and consumption of 'paint and dust containing lead and lead pigment.'"  *Id*.  CX Re has met its burden in demonstrating that the Exclusion to the Policies applies in the Tort Suit.  The burden thus shifts to Arbor to show that an Exception to the Exclusion applies.  *See Bao*, 353 F. Supp. 2d at 535.

An Exception to the Exclusion provides coverage for bodily injuries arising from lead exposure, where the bodily lead levels are diagnosed by a qualified person, *during the term* of the Policies, as above 10 micrograms per deciliter of blood.  ECF 44-3 at 1-2.  The terms of the Policies ran from August 1, 1997 to August 1, 1998, for Policy No. CNAGL 1106-97 (ECF 1-3 at 2), and from August 1, 1998 to August 1, 1999, for Policy No. CNAGL 1240-98.  ECF 1-4 at 2.

Thus, to fall within the Exception, "a lead level in blood, bone or body tissue in excess of the 'safe level' [must have been] first diagnosed by a State licensed physician or other State licensed health care provider during this policy period."  *Id*. at 2.  But, Arbor has failed to meet its burden of production; there is no showing whatsoever that Heggie was first diagnosed with a lead level above 10 micrograms per deciliter of blood, the "safe level," at some time *during the term* of the Policies, which, when combined, ran from August 1, 1997 to August 1, 1999.  *See* ECF 1-3 at 2; ECF 1-4 at 2.

Notably, the Complaint in the Tort Suit (ECF 43-2) does not specify the period during which Heggie was diagnosed as having an elevated lead level in his system.  Moreover, counsel for CX Re has represented that he is unaware of any such evidence tending to show that the Exception could be applicable to Heggie.  ECF 43-1 at 12.

## IV.    Conclusion

In sum, there are no disputes as to the material facts in this case.  The Exception to the Exclusion in the Policies unambiguously provides that CX Re will only be required to defend and indemnify Arbor if the plaintiff in the Tort Suit was first diagnosed with a lead level above the "safe level" during the terms of the Policies.  There is no evidence that this condition was met.  Accordingly, I shall grant the Motion for Summary Judgment.

A Declaration and an Order implementing this ruling follow.


Date:__October 14, 2016____                    _____/s/_____
                                               Ellen L. Hollander
                                               United States District Judge